**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-_____________________________

FARMER OIL AND GAS PROPERTIES, LLC,
an Arizona Limited Liability Company

Plaintiff,

v.

THE SOUTHERN UTE INDIAN TRIBE

---

**COMPLAINT FOR DECLARATORY RELIEF**

---

**COMES NOW** Plaintiff, Farmer Oil and Gas Properties, LLC ("Farmer"), by and through its attorneys, Lon W. Abadie and William E. Zimsky, Abadie & Schill, PC, and for its causes of action against the Southern Ute Indian Tribe ("the Tribe"), alleges and avers as follows:

## I. INTRODUCTION

1. This case involves a dispute over the ownership of coalbed methane underlying the S/2SW/4 of Section 35, Township 33 North, Range 11 West, N.M.P.M. ("the Subject Lands"). (The coalbed methane underlying the Subject Lands is referred to herein as "the Subject Minerals.")

2. Judge Babcock entered a definitive ruling in *Southern Ute Indian Tribe v. Amoco Production Company*, 874 F. Supp. 1142 (D.Colo. 1995) ("the CBM case"), which ruling is dispositive as to the issues presented in this Complaint.

3. The Tribe filed a complaint in the CBM Case against Farmer's predecessor in interest, and others, in 1991, alleging ownership of the coalbed methane underlying the Subject Lands among other lands. By doing so, the Tribe waived any claim of sovereign immunity regarding the ownership of coalbed methane in the Subject Lands, and specifically with respect to Farmer's interest in such lands.

4. In 1994, Judge Babcock decided in favor of Farmer's predecessor in interest and the other defendants and adversely to the Tribe with respect to ownership of the coalbed methane underlying the Subject Lands, among other lands. The United States Supreme Court affirmed Judge Babcock's decision and remanded the case to District Court. *Amoco Production Company v. Southern Ute Indian Tribe*, 526 U.S. 865 (1999).

5. The Tribe, however, has ignored Judge Babcock's decision and has filed pleadings in Tribal Court claiming ownership of the coalbed methane underlying the Subject Lands for the time period from 1966 to the present.

6. The Tribe's claim of ownership has created a cloud on the Farmer's title to the Subject Minerals, rendering such minerals worthless until a Court can review the merits of the Tribe's claim.

## II. PARTIES

7. Plaintiff Farmer is a limited liability company organized under the laws of the State of Arizona. Farmer's principal place of business is located in Maricopa County, Arizona.

8. The Southern Ute Indian Tribe is a federally-recognized Indian tribe organized pursuant to the Indian Reorganization Act of 1943, ch. 576, 48 Stat. 984 (codified as amended at

25 U.S.C. §§ 461-79). The Southern Ute Indian Tribe Reservation is located in La Plata County and Archuleta County, Colorado.

## III. JURISDICTION AND VENUE

9. This case involves a dispute over the ownership of coalbed methane in lands subject to the Coal Lands Act of 1909, codified at 30 U.S.C. § 81, and the Coal Lands Act of 1910, codified at 30 U.S.C. §§ 83-85. Furthermore, Judge Babcock previously adjudicated the issue of ownership of the Tribe's interest in coalbed methane in the Subject Lands. It is that judgment of this Court that Farmer seeks to enforce specifically to Farmer's interest in the Subject Minerals and which the Tribe, through pleadings filed in Tribal Court, has challenged. Thus, this case presents a federal question and jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331.

10. All of the events that give rise to the causes of action stated herein occurred within the District of Colorado. Moreover, the Subject Lands are located within the District of Colorado. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1381(a).

## IV. GENERAL ALLEGATIONS

11. By Warranty Deed dated May 27, 1946 ("the Cameron Deed"), Raymond D. Farmer and Olive M. Farmer, his wife, and Laura R. Farmer conveyed the S1/2SW1/4 of Section 35 in Township 33 North, Range 11 West, N.M.P.M., among other lands situated in La Plata County, Colorado, to John C. Cameron, with a mineral reservation. The Cameron Deed was recorded in La Plata County on June 3, 1946, in Book 256 at Page 344.

12. The Cameron Deed contains the following reservation:

> Excepting from the above lands, however, all minerals including oil, gas and carbonaceous minerals together with the right to prospect for, mine and remove the same, for a period of twenty years at which time such reservations shall terminate unless such minerals are being produced from said land at the end of twenty years, in which event said reservations shall continue during production.

13. At the time of the execution of the Cameron Deed, Raymond D. Farmer, Olive M. Farmer and Laura R. Farmer owned the oil and gas estate in the following described lands (all of which were included in the Cameron Deed) located in La Plata County, Colorado:

<u>Township 33 North, Range 11 West, N.M.P.M.</u>
Section 23: SW1/4SE1/4
Section 26: N1/2NE1/4
Section 35: S1/2SW1/4

<u>Township 32 North, Range 11 West, N.M.P.M.</u>
Section 2: NW1/4, N1/2SW1/4
Section 14: W1/2NW1/4
Section 15: E1/2NE1/4.

14. Farmer is a successor in interest to Raymond D. Farmer, Olive M. Farmer and Laura R. Farmer and owns an undivided 78.5714286% terminable mineral interest in the oil and gas estate, including coalbed methane, underlying the lands described in Paragraph 13, which include the Subject Lands.

15. The terminable mineral interest owned by Farmer created by the Cameron Deed has been perpetuated by production of oil and/or gas on lands subject to the mineral reservation contained in the Cameron Deed.

16. By Warranty Deed dated July 8, 1946 (recorded on September 17, 1946, in Book 256 at Page 443), John C. Cameron and Olive Cameron conveyed all their right, title and interest in certain lands, including the S1/2SW1/4 of Section 35, to the United States of America in Trust for the Southern Ute Tribe.

17. In 1991, the Tribe filed its complaint in the CBM case, seeking to quiet title in, among other interests, the coalbed methane portion of the oil and gas estate underlying the lands described in Paragraph 13, including the Subject Lands.

18. On or about May 20, 1993, the Tribe filed its First Amended Complaint in the CBM case. *See* Docket No. 532.

19. The Tribe asserted ownership of all of the coalbed methane underlying the Subject Lands and other lands located in La Plata and Archuleta counties Colorado by virtue of the coal reservations in the Coal Lands Act of 1909 and 1910 and the Order of Restoration of September 14, 1938, issued by the Acting Secretary of the Interior under authority conferred by the Indian Restoration Act, 25 U.S.C. §§ 463, 478.

20. The coalbed methane underlying the Subject Lands was part of the oil and gas estate in which the Tribe claimed ownership in the CBM case.

21. Farmer's predecessor in interest, Roger Bolan, Trustee of the Olive M. Farmer Revocable Trust, was a member of the defendant class in the CBM case. Roger Bolan is the Manager of Plaintiff Farmer.

22. In the CBM Case, the Tribe acknowledged the fee ownership of the minerals underlying the Subject Lands by entering into the June 29, 1993, Settlement Agreement with Palo Petroleum, Inc., the lessee of minerals owned by Farmer's predecessor in interest that were

part of the terminable mineral interest created by the Cameron Deed. (A copy of this Settlement Agreement is attached hereto as Exhibit 1.)

23. The Settlement Agreement specifically stipulated that the Subject Lands were disputed lands in the CBM case. *See* Settlement Agreement at Article 8.07 (p. 10) and at Appendix I.

24. On August 6, 1993, Judge Babcock approved the Settlement Agreement between Palo and the Tribe and dismissed all of the Tribe's claims against Palo with prejudice. *See* Docket No. 585.

25. The Tribe further acknowledged the fee ownership of the minerals underlying the Subject Lands by executing a Ratification of Settlement Agreement on March 29, 1994. (A copy of this Ratification of Settlement Agreement is attached hereto as Exhibit 2.) Roger Bolan and Olive M. Farmer, Trustees of the Olive M. Farmer Revocable Trust, the immediate predecessor in interest of Farmer, executed the Ratification on April 28, 1994.

26. By Amended Memorandum Opinion and Order entered on or about February 1, 1995, *nunc pro tunc* to September 13, 1994, Judge Babcock specifically resolved all of the Tribe's claims for relief based on the Tribe's assertion of ownership of the coalbed methane, entering judgment against the Tribe and for Farmer's predecessor in interest. *Southern Ute Indian Tribe v. Amoco Production Company*, supra (Docket No. 721).

27. The United States Supreme Court agreed with Judge Babcock and held that the Tribe did not own the coalbed methane underlying lands that were the subject of its First Amended Complaint, which included the Subject Lands. *Amoco Production Co. v. Southern Ute Indian Tribe*, 526 U.S. 865 (1999).

28. By Order dated March 22, 2000, on remand from the Supreme Court, Judge Babcock dismissed all of the Tribe's remaining claims against the non-Federal Defendants that were not resolved by the Court's Amended Memorandum Opinion and Order entered on or about February 1, 1995. *See* Docket No. 863. This Order was the last entry in the docket of the CBM case and the case was closed.

29. Three Stars Production Company, LLC, is the owner of Oil and Gas Leases executed by Farmer and the remaining mineral owners of the Subject Minerals.

30. Despite having litigated and lost its claim of ownership of the coalbed methane underlying the Subject Lands, the Tribe intervened in a lawsuit filed in Southern Ute Indian Tribal Court styled *Three Stars Production Company, LLC v. BP America Production Company*, Cause No. 2010 CV 36, and, as an affirmative defense, made the legally baseless claim that it has owned the oil and gas estate, including the coalbed methane underlying the Subject Lands, premised on the allegation that the terminable mineral interest reverted to the Tribe as of May 27, 1966 (hereinafter referred to as "the Tribe's Renewed Claim").

31. Ultimately, this case was dismissed from Tribal Court because Three Stars could not join the United States whom the Tribal Court determined to be an indispensable party in the Tribal Court litigation, a decision that the Tribal Court premised on its understanding of the scope of the authority of the Department of Interior to regulate oil and gas operations within the exterior boundaries of the reservation.

32. Following exhaustion of Tribal Court remedies, Three Stars Production Company filed a case in the United States District Court for the District of Colorado styled *Three Stars Production Company, LLC v. BP America Production Company*, Case No. 11-cv-1162-WYD-

MUW, seeking relief against BP for, among other causes of action, continuing trespass and drainage, conversion and civil theft and unjust enrichment with respect to the Subject Minerals ("the *Three Stars* case"). The *Three Stars* case is pending before Chief Judge Wiley J. Daniel.

33. BP filed a motion to dismiss Three Stars' complaint suggesting, among other things, that the Tribe was an indispensable party. ECF No. 10 in the *Three Stars* case. In its reply to Three Stars' response to BP's motion, BP argued for the first time that the Tribe was an indispensable party based upon the Tribe's Renewed Claim. ECF No. 16 at page 5. BP argued that the *Three Stars* case could not proceed absent adjudication of the merits of the Tribe's claim. Chief Judge Daniel granted BP's motion, focusing on the Tribe's Renewed Claim, and also noted that the Tribe may be immune from suit in the *Three Stars* case due to its sovereign status. ECF No. 42.

34. Thus, in the *Three Stars* case Chief Judge Daniel relied on a claim that the Tribe presented as an affirmative defense in Tribal Court and that has never been reviewed on its merits to determine that the Tribe was an indispensable party in the *Three Stars* case.

35. Until a Court determines the merits of the Tribe's Renewed Claim in the Subject Minerals, Farmer's mineral interests are worthless. Thus, Farmer is filing this action to enforce the Court's judgment against the Tribe in the CBM case and to obtain declaratory relief against the Tribe that its claim of ownership of the Subject Minerals is frivolous and without merit.

36. The Tribe's Renewed Claim ignores the decision of this Court in the CBM Case that, of the effective date of Judge Babcock's ruling, the Tribe did not own the coalbed methane underlying the Subject Lands.

37. The Tribe's Renewed Claim is also barred because the Tribe is bound by its stipulation in the Settlement Agreement and Ratification of Settlement Agreement that the Subject Lands were part of the disputed lands in the CBM Case and were the subject of the Tribe's request to quiet title, an agreement for which the Tribe sought and received Court approval. *See* Docket No. 613.

38. Thus, Farmer seeks judicial determination that as a successor in interest to a defendant in the CBM case it can enforce Judge Babcock's judgment and remove the cloud on its title created by the Tribe's Renewed Claim, a claim that not only disregards Judge Babcock's decision, but which also contradicts the manner in which the Tribe and Farmer have interpreted the mineral reservation in the Cameron Deed for the past forty-six years.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### REQUEST FOR DECLARATORY RELIEF TO ENFORCE THE JUDGMENT THAT THIS COURT ENTERED REGARDING THE OWNERSHIP OF THE COALBED METHANE UNDERLYING THE SUBJECT LANDS

39. Farmer re-alleges those allegations contained in Paragraphs 1 through 38 of this Complaint and incorporates them herein.

40. An actual controversy exists between Farmer, on the one hand, and the Tribe, on the other hand, with regard to the validity of this Court's judgment in the CBM case as to the Subject Minerals. Farmer asserts that this Court's judgment in the CBM case is a valid judgment that provided that the Tribe did not own the coalbed methane underlying the Subject Lands as of the date of such judgment. The Tribe evidently believes that despite the adverse judgment

entered against it in the CBM case in 1994 which was affirmed upon appeal, that it can make its Renewed Claim asserting ownership of Subject Minerals as of May 27, 1966.

41. Farmer is entitled to a declaratory judgment that this Court's judgment in the CBM case is a valid judgment that held the Tribe did not own the coalbed methane underlying the Subject Lands as of the date of that judgment.

## SECOND CLAIM FOR RELIEF

## REQUEST FOR DECLARATORY RELIEF THAT THE TRIBE'S CLAIM OF OWNERSHIP OF THE MINERALS UNDERLYING THE SUBJECT LANDS IS WITHOUT MERIT AND FRIVOLOUS

42. Farmer re-alleges those allegations contained in Paragraphs 1 through 41 of this Complaint and incorporates them herein.

43. An actual controversy exists between Farmer, on the one hand, and the Tribe, on the other hand, with regard to the Tribe's claim that the Tribe has owned Subject Minerals since May 27, 1966 based on the fact that oil and gas minerals were not produced from the Subject Lands as of May 26, 1966. Farmer asserts that the Tribe's claim to the Subject Minerals is without merit and frivolous.

44. The Tribe's claim of ownership is without merit and frivolous because the terminable mineral interest created by the Cameron Deed in the Subject Minerals has been perpetuated by production of oil and/or gas on the lands subject to the mineral reservation contained in the Cameron Deed.

45. For the past 46 years, the Tribe has acknowledged that the terminable mineral interest created by the Cameron Deed has been perpetuated by production of oil and/or gas on

lands subject to the mineral reservation contained in the Cameron Deed Tribe by entering into numerous communitization agreements both prior and subsequent to May 27, 1966, each of which recognize the validity of fee oil and gas leases covering lands subject to the mineral reservation contained in the Cameron Deed Tribe.

46. In addition, in the CBM Case, the Tribe acknowledged the fee ownership of the minerals underlying the Subject Lands by entering into the June 29, 1993, Settlement Agreement with Palo and by executing a Ratification of Settlement Agreement that was also executed by Roger Bolan and Olive M. Farmer, Trustees of the Olive M. Farmer Revocable Trust, the predecessors in interest of Farmer. Both the Settlement Agreement and Ratification of Settlement Agreement acknowledge the validity of fee oil and gas leases covering the Subject Lands. Both the Settlement Agreement and Ratification of Settlement Agreement also identify the Subject Lands as disputed lands in the CBM Case.

47. Farmer is entitled to a declaratory judgment that the Tribe's Renewed Claim of ownership is without merit and frivolous.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Farmer prays for judgment in its favor and against Defendant the Southern Ute Indian Tribe as follows:

(A) A declaratory judgment in favor of Farmer and against the Tribe that this Court's judgment in the CBM case is a valid judgment that held that the Tribe did not own the coalbed methane underlying the Subject Lands as of March 22, 2000;

(B) A declaratory judgment that the Tribe's claim of ownership of the coalbed methane underlying the Subject Lands is without merit and frivolous;

(C) Attorney fees, costs of suit and all interest as allowed by law; and

(D) Grant any and all further relief this Court may deem just and reasonable.

**RESPECTFULLY SUBMITTED** this 6th day of February, 2012.

ABADIE & SCHILL, PC

Lon W. Abadie
William E. Zimsky
Abadie & Schill, P.C.
1099 Main Avenue, Suite 315
Durango, CO 81301
(970) 385-4401
(970) 385-4901 (Fax)
la@oilgaslaw.net
wez@oilgaslaw.net